## LISA SHERMAN *v.* JACK AXELROD ET AL.

Superior Court, Judicial District of Middlesex
File No. CV-03-0100718

Memorandum filed February 10, 2005

*Suisman, Shapiro, Wool, Brennan, Gray & Greenberg,* for the plaintiff.

*Andrew J. Hern,* for the intervening plaintiff Tojak Corporation.

*Gould, Larson, Bennet, Wells & McDonnell,* for the defendants.

SILBERT, J. Lisa Sherman, the plaintiff in the present action, seeks damages from the defendants as a result of injuries she claims she sustained after slipping and falling on snow and ice on premises belonging to the defendants. Pursuant to Practice Book § 13-11, the defendants requested that the plaintiff submit to a medical examination by James O. Donaldson, a neurologist. The plaintiff objected, pointing out that Donaldson's office is located in Farmington and that there are qualified neurologists who are located more conveniently to the plaintiff's residence in Middlefield, and also registering doubt that "Dr. Donaldson will provide a fair and balanced examination given his long-standing, well known ties to the liability insurance industry." The defendants have responded to this objection, citing a

"trend among Superior Court judges" that requires that any objection to a particular physician be reasonable, and they further contend that the objections interposed by the plaintiff in the present case, particularly that objection relating to Donaldson's history of performing such examinations for the defense, are not reasonable. Although such an objection is not ordinarily an arguable matter, I granted argument in order to examine the "trend" described by the defendants and also to reexamine my prior holdings on this issue in light of more recent Superior Court decisions.[1]

Practice Book § 13-11 (b), in language virtually identical to that of General Statutes § 52-178a, provides: "In the case of an action to recover damages for personal injuries, any party adverse to the plaintiff may file and serve in accordance with [Practice Book §§] 10-12 through 10-17 a request that the plaintiff submit to a physical or mental examination at the expense of the requesting party. That request shall specify the time, place, manner, conditions and scope of the examination and the person or persons by whom it is to be made. Any such request shall be complied with by the plaintiff unless, within ten days from the filing of the request, the plaintiff files in writing an objection thereto specifying to which portions of said request objection is made and the reasons for said objection. The objection shall be placed on the short calendar list upon the filing thereof. The judicial authority may make such order as is just in connection with the request. No plaintiff shall be compelled to undergo a physical examination by any physician to whom he or she objects in writing." A fair reading of the rule, as well as the statute, suggests that although plaintiffs must supply reasons for their objections to the time, place, manner, conditions and

---

[1] All parties agree that neither the Supreme Court nor the Appellate Court has provided guidance on this issue.

scope of the examination, the objection to a particular physician must be honored even in the absence of a good reason. Whether this distinction is wise is, of course, not the issue before the court. The fact remains that although plaintiffs must state their reasons for their objections to certain aspects of requests for "independent"[2] medical examinations, the right to refuse to be examined by any particular physician is absolute, as long as the objection is formally made in writing.

In *Moore* v. *Minton*, Superior Court, judicial district of New Haven, Docket No. CV-94-0364211S (October 8, 1998) (23 Conn. L. Rptr. 109) (*Silbert, J.*), I took what I felt was an eminently practical approach to a comparable objection to a particular physician[3] by ordering the defendant to select a physician to conduct the examination from a list, provided by the plaintiff, of five physicians in her geographical area specializing in the same field as the defendant's proposed medical examiner. Id., 110. Several months later, a less practical, but arguably better analyzed approach, was taken in *Privee* v. *Burns*, 46 Conn. Sup. 301, 749 A.2d 689 (1999). Judge Blue concluded there that the rule and statute meant exactly what they said, and that the court, therefore, had no ability to compel any plaintiff to be examined by any physician to which he or she did not consent, no matter how many times the plaintiff objected and no matter how frivolous the reason might appear. Id., 335. In

---

[2] Neither the rule nor the statute uses the word "independent" although "independent medical examination" and the acronym "IME" are well understood terms in personal injury law. As the physicians chosen to perform such examinations are paid by the defense and, indeed, normally by insurers, they can hardly be said to be more "independent" than expert witnesses hired by plaintiffs or necessarily less "independent" than treating physicians whose involvements in personal injury cases normally begin, at least, as physician-patient rather than physician-litigant relationships.

[3] The plaintiff had claimed both that the physician practiced in a different geographical area and also did a large volume of work on behalf of insurance companies.

reaching this conclusion, however, Judge Blue noted that the defendant was not without a remedy, as defense attorneys were free to cross-examine plaintiffs about their reasons for refusing to be examined and, perhaps, to request an instruction from the court or a right to argue to the jury with regard to an adverse inference to be drawn by the unreasonable failure to submit to such an examination. Id.

Additionally, Judge Beach has pointed out another weakness in my approach in *Moore*. "I disagree with that remedy, because the result is that the plaintiff indirectly chooses his opponent's 'team.' " *Villoch* v. *Reznikoff*, Superior Court, judicial district of Hartford, Docket No. CV-00-0597560S (April 12, 2002) (31 Conn. L. Rptr. 734, 735) (*Beach, J.*). Judge Beach certainly makes a valid point, especially if the plaintiff chooses to stack his or her list with physicians who, rightly or wrongly, have reputations for being overly generous in their assessment of disability ratings.

These well reasoned criticisms have contributed to my doubts about my practical approach to resolving objections to requests for independent medical examinations expressed in *Moore*. It is clear that the Superior Court bench has now crafted several approaches to the issue, and in *Wallace* v. *Commerce Properties, Inc.*, Superior Court, judicial district of New Haven, Docket No. CV-95-0377552 (November 24, 1999) (26 Conn. L. Rptr. 25, 26) (*Alander, J.*), the court divided the various Superior Court decisions on the subject into three categories: "(1) the pragmatic approach, which limits the plaintiff's right to object to grounds that are reasonable [see *Moore* v. *Minton*, supra, 23 Conn. L. Rptr. 109; *Fabozzi* v. *National R.R. Passenger Corp.*, Superior Court, judicial district of New Haven, Docket No. 245450 (October 25, 1988) (26 C.S.C.R. 889) (*Corradino, J.*); *LeBlanc* v. *Cambo*, 26 Conn. Sup. 338, 223 A.2d 311 (1966)]; (2) the absolutist approach, which holds that

a plaintiff has an absolute and unconditional right to object to a particular physician [see *Dittman* v. *Spotten,* Superior Court, judicial district of New London, Docket No. 541013 (March 16, 1998) (21 Conn. L. Rptr. 414) (*Hurley, J.*); *Argo* v. *Sender,* Superior Court, judicial district of Ansonia-Milford, Docket No. CV-90-030861S (March 11, 1991) (3 Conn. L. Rptr. 315) (*Jones, J.*); *Mulligan* v. *Goodrich,* 28 Conn. Sup. 11, 246 A.2d 206 (1968)]; and (3) the modified absolutist approach, which opines that while a plaintiff has an absolute right to object to a particular physician, the exercise of that right can be sanctioned in extreme cases [see *Privee* v. *Burns,* supra, 46 Conn. Sup. 301]."

In one of the more recent of the "unpublished" decisions on this subject to come to my attention, the court followed the third category in Judge Alander's taxonomy, concluding that Judge Blue's decision in *Privee,* whereby the plaintiff has an unconditional statutory and Practice Book right to object to any physician, was the most persuasive. *Murphy* v. *Lopez,* Superior Court, judicial district of Waterbury, Docket No. CV-02-0170910 (June 2, 2004) (37 Conn. L. Rptr. 191, 192) (*Matasavage, J.*). The court noted that the broad power given to a plaintiff to object was not totally unfettered, as "the defendant is entitled, at trial, to cross-examine the plaintiff on any objections he may have made, and the defendant should be permitted to argue to the jury that it should draw an adverse inference from the plaintiff's objections. Further, in the event a plaintiff exercises an objection to the point where, as a practical matter, the defendant is rendered unable to obtain an independent examination, then the court in extreme cases, can exclude parts of the plaintiff's expert testimony." Id.

Judge Alvord, in a July, 2004 decision, points out that Practice Book § 13-11 (b) gives the court the authority to "make such order as is just in connection with the

request." (Internal quotation marks omitted.) *Serra* v. *Highland*, Superior Court, judicial district of Waterbury, Docket No. CV-99-0154900S (July 1, 2004) (37 Conn. L. Rptr. 321, 322) (*Alvord, J.*). She concludes that while the right to refuse to be examined by a particular physician is absolute, the court may still look at the reason for the objection, and if the court finds the objection unreasonable, it may "overrule" it. She nonetheless holds that even if the objection is overruled as "unreasonable," the court may not, as a consequence, compel the plaintiff to be examined. "The plaintiff's objection to the requested examination is overruled, with the understanding that he is not compelled by the court to submit to the examination." Id., 323. She, too, leaves the remedy to the defense at the time of trial, when it may cross-examine at will as to the reasons behind the refusal. As Judge Beach pointed out in *Villoch* v. *Reznikoff*, supra, 31 Conn. L. Rptr. 735, "[s]uch factor is fair game for cross-examination, and our adversarial system can resolve opposing points of view. A plaintiff, after all, is free to consult with any physician of any philosophical bent. . . . The objection may make sense from a litigation point of view, but it is not a personal reason why a patient should not go to a particular physician."

Thus, I wonder anew whether I should abandon my more practical or, as Judge Alander called it, "pragmatic" approach to resolving such objections. I am not persuaded by the approach taken in *Serra* since, if the plaintiff has an absolute right to refuse examination, overruling the objection seems to be an illogical response. The problem with Judge Blue's reasoning, as emphasized by the previously quoted portion of Judge Matasavage's decision in *Murphy*, is that the fetters authorized by Judge Blue's "modified absolutist approach" do not come into play until and unless there is a trial. The traditional right of cross-examination is

thus unsatisfying as the antidote to the right to "just say no" because its exercise depends on a statistically increasingly highly unlikely occurrence: a trial on the merits. As is apparent from the significant efforts made by the judicial branch, and by the organized bar, to resolve cases short of trial, the focus of litigation has changed, with enormous efforts by both bench and bar to utilize the discovery phase of civil proceedings to learn as much about the facts and law as possible, then strive to resolve the case without a trial. It is axiomatic that all cases cannot be tried on their merits without creating judicial chaos, and very few practitioners, judges or scholars believe that even if they could do so, they should try every case.

The remedy described in the *Privee* line of cases thus does not advance one of the underlying purposes behind Practice Book § 13-11 and, indeed, all of our civil discovery rules, namely, the making available of information that will allow the parties to undertake intelligent settlement negotiations. The purposes of both this rule and the statute are consistent with the overall aim of the discovery process, which is not only to prevent "trial by ambush," but also to provide all parties with the information they need to explore settlement before trial. To the extent that persistent refusal to be examined by a physician on behalf of the defendant prevents the defense from a meaningful exploration of the plaintiff's claimed injuries at trial, the remedies afforded by cross-examination and, when necessary, preclusion, provide a satisfactory approach to preventing the worst of the consequences of trial by ambush. They do nothing, however, to assist the parties in the negotiation of reasonable settlements prior to trial, as the defense is prevented from completing its full exploration of the extent and perhaps causation of the plaintiff's injuries. Waiting for trial to address the issues posed by a refusal

to be examined thus undermines one of the main purposes behind allowing independent medical examinations in the first place.

Unfortunately, each of the approaches to resolving the dilemma created by Practice Book § 13-11 that has been taken by trial judges, myself included, has its own flaws. Also unfortunately, this is not the type of issue that is likely to make its way to the Appellate Court or Supreme Court in the near future. It is apparent that the clearest path to a definitive statement as to what is meant by the plaintiff's right to object to a particular physician should come from the judges of the Superior Court in the form of an amendment to Practice Book § 13-11. In the meantime, while awaiting guidance from judges sitting on higher courts or on the rules committee of the Superior Court, I will continue on my flawed but pragmatic course designed to promote the kind of exchange of information that is likely to foster settlement and, failing that, to give the trier of fact as much information as possible upon which to make a decision and to permit the trial court to make such rulings as are necessary.

Consistent with that point of view, although I feel that the fact that the proposed physician frequently performs medical examinations for the defense bar is not a valid basis for refusal,[4] this court has no authority to overrule the objection or to compel the plaintiff to be examined by this physician in light of the absolute power given to plaintiffs to refuse.[5] Indeed, no ruling on the objection itself is even required.

One of the flaws with my approach, however, as pointed out by Judge Beach, does need to be addressed.

---

[4] In my experience, however, it makes dandy fodder for cross-examination of the defense expert.

[5] At oral argument, the plaintiff abandoned her objection based on an absence of geographical proximity.

The court therefore orders the plaintiff to submit to the defendants a good faith list of no fewer than five neurologists located within a thirty mile radius of the plaintiff's home by whom she is willing to be examined at the behest and expense of the defendants. If, however, the defendants find none of the physicians proposed by the plaintiff to be acceptable, they may apply to the court for "such order as is just" in accordance with Practice Book § 13-11. The defense thus has a remedy if it truly does not want any of the proposed physicians to play on their "team." The court hardly wishes to encourage frequent short calendar battles over the identity of the physician who will perform the examination, but it is actually confident that a reasonable bar will endeavor to find reasonable solutions so that courts will rarely be asked to choose the independent medical examiner for the parties. Should all else fail, however, the court will, at the time of trial (if there is a trial), consider imposing one or more of the sterner remedies sought by the defendants.

The plaintiff's list of proposed physicians is to be submitted to the defendants no later than thirty days from the date of this memorandum of decision.